IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

BRENDA A. MOORE,                    )
                                    )
          Plaintiff,                )
                                    )
     vs.                            )        No. 18-cv-2881-SHL-dkv
                                    )
                                    )
MEGAN J. BRENNAN,                   )
*Postmaster General*,               )
                                    )
          Defendant.                )
_____

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
_____

On December 28, 2018, the plaintiff, Brenda A. Moore ("Moore")

commenced this *pro se* civil action against the defendant, Megan J.

Brennan ("Brennan"), Postmaster General for the United States

Postal Service (the "Agency"), alleging violations of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title

VII").[1] (Compl. 1, ECF No. 1.) On February 20, 2019, Brennan

filed an answer to Moore's complaint. (Ans., ECF No. 11.)

_____

[1] In one line of Moore's complaint, she states that this
action is brought in violation of the Tennessee Human Rights Act.
Moore, however, goes on to state that this action is brought
pursuant only to Title VII. Furthermore, in additional pleadings
on record, the only claims discussed are those brought pursuant to
Title VII. Additionally, even if the court considered Moore's
complaint as one for violation of the Tennessee Human Rights Act,
it would be recommended that such claim be dismissed for lack of
subject matter jurisdiction as it is recommended that summary
judgment in favor of Brennan be granted on all of Moore's Title

Before the court is Brennan's motion for summary judgment, filed on January 10, 2020.  (Mot. for Summ. J., ECF No. 33.)  On March 4, 2020, Moore filed her response, (Resp., ECF No. 38), and Brennan filed a reply on March 17, 2020, (Reply, ECF No. 43.)  This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate.  (Admin. Order 2013-05, Apr. 29, 2013.)

For the following reasons, it is recommended that Brennan's motion for summary judgment be granted.

## I.   PROPOSED FINDINGS OF FACT

This court finds that the following facts are undisputed for purposes of this motion for summary judgment:[2]

The allegations set forth in Moore's *pro se* complaint stem from allegations Moore made in two EEOC complaints: Case No. 1C-371-0034-17, dated April 18, 2017 and Case No. 1C-371-0037-18, dated May 4, 2018.  (First EEO Compl., ECF No. 33-15; Second EEO Compl., ECF No. 33-16.)  In 2016, Moore worked as a Mail Processing

---

VII claims thus depriving the court of jurisdiction over any state law claim.

[2] Brennan sets forth eighteen undisputed facts in her statement of undisputed facts, several of which Moore disputes. Moore's response contained seven additional facts, almost all of which Brennan objects to in whole or in part.  Additionally, each party attached numerous documents to their pleadings, which have been reviewed by the court and included where relevant.

Clerk for the Agency at the Memphis, Tennessee Processing and Distribution Center (the "P&D Center"). (Compl. ¶ 14, ECF No. 1.) Moore alleges that she was discriminated against on the basis of her sex, subjected to a hostile work environment, and retaliated against. (Compl., ECF No. 1; Moore Depo. 25:6-19, ECF No. 33-3.)

Moore first asserts that she notified Supervisor Distribution Operation ("SDO") McKinnie[3] that a co-worker, Mario Arnold ("Arnold"), was cursing and threatening her on December 9, 2016. (Compl. ¶ 15, ECF No. 1.) Moore stated in her deposition that Arnold cursed and threatened her, and she informed McKinnie that she was afraid of Arnold because he was a young man and she was old enough to be his mother. (Moore Depo. 27: 15-21, ECF No. 33-3.) Moore alleges that Arnold was following her, taking pictures of her, and coming into her unit. (*Id.* at 28:23-25.)

In an email dated December 9, 2016, McKinnie explained to Derome C. Bobo ("Bobo"), an MDO, that Moore approached him on the workroom floor with a complaint regarding Arnold. (Dec. 9, 2016 Email, ECF No. 33-10.) McKinnie further explained that when Moore told him of the allegedly harassing behavior, that he allowed her time off the workroom floor to make a written statement and that he would follow up with Arnold. (*Id.*) McKinnie stated that he

---

[3] McKinnie is an SDO, but at some point, began the position of acting Manager Distribution Operation ("MDO"). (McKinnie EEO Investigative Aff., ECF No. 40-15.)

followed up with each of the employees privately, asking them whether they felt safe to continue working and asking them whether they needed police escort, which both declined. (*Id.*) Both Moore and Arnold provided McKinnie with a statement regarding the incident. (*Id.*; Moore Written Statement, ECF No. 33-10; Arnold Written Statement, ECF No. 33-10.)

In an email dated January 6, 2017 to Bobo, McKinnie states that he met with Arnold and his supervisor, Terethea Phillips, to address the situation. (Jan. 6, 2017 Email, ECF No. 33-4.) The email states in relevant part that "Arnold was made aware of the seriousness of the allegations concerning him and [] Moore. Mr. Arnold has been advised to avoid confrontation with [] Moore and . . . to avoid all contact . . . Mr. Arnold was made aware of postal rules, regulations, and conduct on while postal property . . . [and] that los[t] time from the workroom floor to address incidents . . . could result in corrective action." (*Id.*)

On January 27, 2017, McKinnie and Harry Conway ("Conway"), an SDO, interviewed Moore about the incident with Arnold. (Jan. 31, 2017 Email, ECF No. 33-7.) In the email summarizing the meeting, McKinnie listed questions posed to Moore and her answers. (*Id.*) According to the email, Moore indicated that the harassing behavior had been going on for at least five months. (*Id.*) Moore further stated during the meeting that "management was allowing someone to put something [] [such as] a bad odor and hair weave in [her] work

4

area" and that at her previous work area management would allow "them to put fumes in the air and allow them to drop things in [her] head from the ceiling." (*Id.*) Moore alleged that the postal inspectors and postal police were responsible. (*Id.*) Lastly, Moore stated that after she brought management's attention to Arnold "he [was] no longer bothering [her]." (*Id.*) Moore, however, attached a typed letter sent to McKinnie, dated February 8, 2017 contending that she never claimed management, postal inspectors, or postal police were conspiring to harm her and that Conway misinterpreted her statements during the January 27, 2017 interview. (Feb. 8, 2017 Letter, ECF No. 39-4.)

On January 26, 2017, the day before the meeting with McKinnie and Conway regarding the confrontation with Arnold, Moore notified supervisor Oliver Gross ("Gross"), that there were unsafe conditions in her work area. (Compl. ¶ 18, ECF No. 1.) Specifically, Moore stated that substances were left in her vehicle and around her work area which caused her to suffer nausea, stomach pain, burning eyes, and difficulty breathing. (*Id.* ¶¶ 17-18.) McKinnie became aware of Moore's complaint regarding the unsafe conditions, although Moore disputes how McKinnie became aware. (Def.'s Statement of Undisputed Facts ¶ 8, ECF No. 33-2; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 8, ECF No. 40.) Regardless, however, Moore alleges McKinnie took no action except

to "harass, intimidate, and deny" Moore's claim. (Compl. ¶ 19, ECF No. 1.)

Bobo stated in his deposition that once he heard of the complaints regarding the smell, he and the plant manager walked around the area to see if they could detect any odor and to see if there were any problems with the piping or plumbing. (Bobo Depo. 59:8-18, ECF No. 59.) Neither Bobo nor the plant manager claimed to detect anything. (*Id.*) Bobo testified that he then asked another manager to go with him. (*Id.* at 59:19-22.) After walking the area, they could not detect anything. (*Id.*)

Moore alleges that her filing a complaint regarding Arnold and her safety caused McKinnie and Conway to retaliate against her by ordering Fitness for Duty Evaluations and the ultimately issuing a Letter of Warning ("LOW"). (Moore Depo 152:23-153:9, ECF No. 33-3.)

McKinnie explained that the information gathered during Moore's interview about the confrontation with Arnold was sent to others above McKinnie for determination of whether Moore should participate in a Fitness for Duty Evaluation. (McKinnie Depo. 42:7-10, ECF No. 33-9; Def.'s Reply to Pl.'s Additional Facts ¶ 4, ECF No. 43-1.) Moore included an email from McKinnie to Bobo, among others, in which he recommends Moore be given a Fitness for Duty Evaluation dated January 29, 2017. (Jan. 29, 2017 Email, ECF No. 40-8.) Additionally in the record, is an email dated January

30, 2017 to Ruth Bland ("Bland"), Manager of Human Resources, from Bobo. (Bland Email, ECF No. 33-7.) In it, Bobo summarizes a prior conversation about Moore. (*Id.*) Bobo explained that he spoke with Connie King about the meeting between McKinnie, Conway, and Moore on January 26, 2017. (*Id.*) King told Bobo to speak with Charisse Gamble or Bland about seeking approval for a Fitness for Duty Evaluation. (*Id.*) King was apparently in agreement that a Fitness for Duty Evaluation may be necessary. (*Id.*) Bland ultimately agreed that a Fitness for Duty Evaluation was necessary and requested that the appropriate paperwork be completed. (*Id.*)

A Request for Fitness for Duty Examination was completed by McKinnie on January 30, 2017 after Moore had made numerous allegations about being followed, intimidated, threatened, and co-workers placing "something in her work area and her car to make her sick." (First Req., ECF No. 33-7 & 43-2.) The record contains a written statement by Arnold, written after being approached by McKinnie, and a statement by Sharon Moore. Both indicate that Moore had verbally accused them of following her in the workplace. (Arnold Written Statement, ECF No. 33-10; Sharon Moore Written Statement, ECF No. 33-10).

The Agency ultimately issued three letters requesting that Moore undergo a Fitness for Duty examination on February 3, 2017, February 13, 2017, and February 21, 2017. (Moore Depo. 97:1-18; ECF No. 33-3.) Moore alleges that Conway and McKinnie "harassed

7

and assassinated her character" when she was presented with these requests. (Compl. ¶¶ 20-21, ECF No. 1.) Moore further suggests that she was sent for Fitness for Duty examinations because she complained about these unsafe conditions. (*Id.*) The Agency agrees that Moore did not exhibit violent behavior in 2017; however, in the first Request for Fitness for Duty Examination, the Agency stated that Moore appears to be experiencing severe problems including numerous verbal outburst and allegations. (First Req., ECF Nos. 33-7 & 43-2.) Additionally, the Agency cited Moore's continuous allegations that co-workers were threatening, intimidating, and following her. (*Id.*)

In her deposition, Moore contends that McKinnie and Conway harassed her with humiliation and derogatory statements and required her to do the mental evaluations based on her gender and that she had a male co-worker threaten her and he was not subjected to a mental evaluation. (Moore Depo. 155:22-24, ECF No. 33-3.). (Moore Depo. 155:18-21, ECF No. 33-3.)

On March 8, 2017, Moore was subjected to an Investigative Interview for failure to attend the Fitness for Duty Examinations. (Compl. ¶ 23, ECF No. 1; Moore Depo. 89:5-7; ECF No. 33-3.) The Investigative Interview was conducted by Rosalind Reed ("Reed"), an SDO at the Memphis P&D Center. (Moore Depo. 89:5-7, ECF No. 33-3; Reed EEO Investigative Aff., ECF No. 40-10.) Moore contends that she did not "demonstrate any kind of abnormal behavior[] for

McKinnie to determine that [she] needed a [Fitness for Duty Examination]." (Compl. ¶ 25, ECF No. 1.) Moore states in her deposition that she did not attend the Fitness for Duty Examinations because "there was no reason." (Moore Depo. 92:3-4, ECF No. 33-3.) Moore also attached a printed letter dated February 21, 2017 to McKinnie in which she states that she did not go to the first Fitness for Duty Examination because she already had a doctor's appointment with her own physician and she did not go to the second Fitness for Duty Examination because she did not receive notification of the appointment in time to go.[4] (Feb. 21, 2017 Letter, ECF No. 39-5.)

The notice of Investigative Interview is dated March 8, 2017 and signed by Reed. (Investigative Interview, ECF No. 33-6.) The subject of the Investigative Interview was "failure to follow instructions." (*Id.*) The Investigative Interview indicates that Moore was scheduled for three Medical Fitness for Duty Examinations and that three letters were received by Moore. (*Id.*) The letters were sent out on: (1) February 3, 2017, asking Moore to report at 2:00 PM on February 15, 2017; (2) February 13, 2017, asking Moore

---

[4] Moore attaches a copy of a postage marker which shows that the Agency sent Moore something on February 16, 2017 with a scheduled delivery date of February 17, 2017. From what the court can glean, Moore argues that this contained a notice of request for a Fitness for Duty Examination, but that she did not receive it until the day of the scheduled appointment or later. (Feb. Postage Mark, ECF No. 40-3.)

to report at 2:00 PM on February 17, 2017; and (3) February 21, 2017, asking Moore to report at 2:00 PM on March 2, 2017. (*Id.*) Moore failed to report to any of the scheduled appointments. (*Id.*) Reed recommended that Moore receive a LOW for failure to follow instructions, (*id.*), and on March 10, 2017, Reed requested the issuance of a LOW to Moore, and higher management agreed to do so, (Req. for Appropriate Action, ECF No. 33-8).

Moore included an email from Bobo to several individuals in management, including McKinnie, stating that Moore had failed to attend any of the three Fitness for Duty Examinations scheduled in which Bobo requested that corrective action be in his office by Thursday, March 9, 2017. (Corrective Action Email, ECF No. 40-9.)

An official LOW was issued to Moore on March 22, 2017. (LOW, ECF No. 33-8.) The LOW states that Moore was charged with violations of the Postal Service Standard of Conduct when she failed to appear after being notified in writing on three occasions that she was required to undergo a Fitness for Duty Examination. (*Id.*) Additionally, the LOW stated that each of the letters informed Moore of her appointment for a Fitness for Duty Examination and stated, "Failure to completely cooperate with the evaluation could result in disciplinary action up to an including separation from the postal service." (*Id.*)

10

Also, in the record is an email from Bobo to Connie King dated March 23, 2017.  (Mar. 23, 2017 Email, ECF No. 40-11.)  In it, Bobo tells King to schedule Moore for another Fitness for Duty Examination and explained that Moore had been issued corrective action for failure to report to three other appointments.  (*Id.*)  Additionally, Bobo states that "although [they] are not receiving any more complaints from Ms. Moore stating there is a smell around her work area or indicating co-workers are following and harassing her . . . she has filed EEO for a mediation regarding this manner."  (*Id.*)

Moore also included letters from various doctors, including one from Lora Alison Pomykala, MD ("Dr. Pomykala").  (Dr. Pomykala Letter, ECF No. 40-12.)  Dr. Pomykala's letter is dated June 6, 2018 and states that Moore is not currently being treated for any mental health conditions.  (*Id.*)

Moore also attached an email chain between Bobo and Bland, dated August 10, 2017.  (Bobo and Bland Emails, ECF No. 40-11.)  In an email to Bland, Bobo states that Moore has refused several Fitness for Duty Examinations and Bobo seeks Bland's advice.  (*Id.*)  In response, Bland states that if Moore is performing her job, nothing needs to be done, but that if Moore is not performing her job, then it should be addressed.  (*Id.*)  Bobo responded by indicating that in a prior conversation, he believed Bland wanted to place Moore in a non-duty status until she provide documentation

11

that she was fit for duty. (*Id.*) Bland, however, responded that this was a misunderstanding. (*Id.*) Bland indicated that if Moore became a danger to herself or others, the Agency could require Moore to provide documentation from a doctor stating that she is safe to work. (*Id.*) Otherwise, however, Bland stated that no employee is required to attend a Fitness for Duty Examination, and even if an emergency Fitness for Duty Examination was requested, the Agency could not force Moore to attend. (*Id.*) Bobo responded with "Ok." (*Id.*)

McKinnie stated in his deposition that Moore was placed on off duty status on April 4, 2018 as a result of her failing to follow instructions regarding her failure to report for the Fitness for Duty Examination. (McKinnie Depo. 70:12-19, ECF No. 40-3.)

Moore filed her *pro se* complaint against Brennan on December 28, 2018. (Compl., ECF No. 1.) Moore brings her claims pursuant to Title VII. (*Id.* ¶ 1.) Moore alleges that she was discriminated against on the basis of her sex and subjected to a hostile work environment when: (1) on December 9, 2016, a co-worker cursed at her and threatened her and management did nothing; (2) on or around January 27, 2017, and other dates, she complained of an odor in her unit and management did nothing; (3) on February 3, 3017, she was informed that she would be sent for a Fitness for Duty exam; (4) on March 8, 2017, she was given an Investigative Interview; (5) on or about March 22, 2017, she was issued a letter of warning;

and (6) on or about April 4, 2018, she was placed an Emergency Job
Placement.[5]  (*Id.* ¶¶ 15-19, 33.)  Moore additionally alleges that
she was retaliated against when: (1) she filed her first EEO
complaint on April 19, 2017; (2) she complained about her safety
and management did nothing; (3) she received letters for Fitness
for Duty Examinations; (4) she received a LOW; (5) she was placed
on Emergency Job Placement on April 4, 2018; (6) McKinnie requested
that she give him her work ID badge and Postal Police escorted her
off postal property; (7) she was scheduled for another
Investigative Interview on May 31, 2018; and (8) she was forced to
retire on April 28, 2018.

For relief, Moore seeks equitable and injunctive relief as
well as front pay and compensatory and punitive damages.  (*Id.* at
Prayer for Relief.)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Legal Standard

---

[5] The fact that this claim was not included in Moore's EEOC
complaints, is irrelevant.  After the Supreme Court's decision in
Fort Bend *County v. Davis*, 139 S. Ct. 1843 (2019), Title VII's
charge-filing requirement is a processing rule, not
jurisdictional.  As such, it is up to the defendant to properly
raise the plaintiff's failure to exhaust his or her administrative
remedies on a claim.  Brennan has not done so in regard to Moore's
sex discrimination or hostile work environment claims, instead
relying on Moore's failure to create a genuine dispute of material
fact as to essential elements of her claims pursuant to Title VII.
But see *infra* Part II.D.1 where Brennan raises the issue of
exhaustion of administrative remedies as to Moore's retaliation
claims.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a); *see also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993); *Osborn v. Ashland Cty. Bd. of Alcohol, Drug Addiction & Mental Servs.*, 979 F.2d 1131, 1133 (6th Cir. 1992)(per curium). The moving party has the burden of showing that there are no genuine issues of material fact in the case. *LaPointe*, 8 F.3d at 378. This may be accomplished by pointing out to the court that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

In response, the non-moving party must go beyond the pleadings and present significant probative evidence to demonstrate that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d at 378. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *LaPointe*, 8 F.3d at 378.

14

In deciding a motion for summary judgment, the "[c]ourt must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993)(quoting *Anderson*, 477 U.S. at 251-52). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Patton*, 8 F.3d at 346; *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). However, to defeat a motion for summary judgment, "[t]he mere existence of a scintilla insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252; *LaPointe*, 8 F.3d at 378. Finally, a court considering a motion for summary judgment may not weigh evidence of make credibility determinations. *Anderson*, 477 U.S. at 255; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

B.    <u>Moore's Sex Discrimination Claim</u>

Moore claims that she was subjected to sex based discrimination when: (1) on December 9, 2016, a co-worker cursed at her and threatened her and management did nothing; (2) on or around January 27, 2017, and other dates, she complained of an odor in her unit and management did nothing; (3) on February 3,

2017, she was informed that she would be sent for a Fitness for Duty Examination; (4) on March 8, 2017, she was given an Investigative Interview; (5) on or about March 22, 2017, she was issued a letter of warning; (6) on or about April 4, 2018, she was placed an Emergency Job Placement. (Compl. ¶¶ 15-19, 33, ECF No. 1.)

    1.   *Moore's Prima Facie Case of Sex Discrimination*

In Brennan's motion for summary judgment, Brennan argues that Moore cannot establish a *prima facie* case of sex discrimination because Moore has not presented evidence that she was treated less favorably than a similarly situated individual outside of her protected class. (Mem. in Supp. of Mot. for Summ. J. 12-14, ECF No. 33-1.) In her response, Moore attempts to show that she has created a *prima facie* case. (Pl.'s Mem. in Supp. of Resp. 13-14, ECF No. 39.)

Title VII makes it unlawful for an employer "to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). In the absence of direct evidence of discrimination,[6] the claim is governed by

---

[6] In her response, Moore appears to contend that there is evidence of direct discrimination; however, after review of the record, there is no direct evidence of sex based discrimination

the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), later modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  To establish a *prima facie* case of sex discrimination, a plaintiff is required to show: (1) she is a member of a protected group; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably.  *See, e.g., Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004).

If the plaintiff makes this showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision.  *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006).  If the defendant successfully rebuts the plaintiff's assertions of discrimination, the plaintiff must then demonstrate by a preponderance of the evidence that the legitimate reasons set forth by the defendant were pretextual, i.e., fabricated for the purpose of concealing an unlawful motive.  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391-92 (6th Cir. 2008).  The ultimate burden of persuasion, however, never shifts from the plaintiff.  *Id.* at 392.

Brennan acknowledges, and the record reflects, that Moore can establish the first and third elements of her *prima facie* case for

---

and as such, Moore must rely on circumstantial evidence which is governed by the burden-shifting analysis in *McDonnell Douglas*.

sex discrimination as to each of the above referenced claims. (Mem. in Supp. of Mot. for Summ. J. 12, ECF No. 33-1.) Moore is a female, and thus, is a member of a protected class. Furthermore, there is no indication that Moore was not qualified for her position, and Moore is not alleging a failure to promote claim and as such, there is no issue regarding her qualifications for her position.

Additionally, the record reflects that Moore was subjected to adverse employment actions when: (1) on March 8, 2017, she was given an Investigative Interview; (2) on or about March 22, 2017, she was issued a letter of warning; and (3) on or about April 4, 2018, she was placed an Emergency Job Placement. Brennan acknowledges this in her motion for summary judgment. (*Id.*) For purposes of this report and recommendation, the court will assume that Moore's allegations that she was harassed by a co-worker at work is also an adverse employment action.

As to Moore's claims that she was subjected to sex discrimination when: (1) on January 27, 2017 she complained of an odor in her unit and management did nothing and (2) on February 3, 2017, she was informed that she would be sent for a Fitness for Duty Examination, Moore fails to establish that she was subjected to an adverse employment action. The Sixth Circuit has defined adverse employment actions as decision that "constitute[] a significant change in employment status, such as hiring, firing,

18

failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Freeman v. Potter*, 200 F. App'x 439, 442 (6th Cir. 2006)(quoting *Burlington Indus., Inc. v Ellerth*, 524 U.S. 742, 761 (1998)). Generally, adverse actions typically are actions which inflict some type of "economic harm" and must amount to a "materially adverse change" in the conditions or terms of employment, rather than something which is merely disruptive or inconvenient. *Id.* (citing *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885-86 (6th Cir. 1996)). Moore's claim that she complained of an offensive odor in her work unit and management did nothing, while perhaps disruptive or inconvenient for Moore, is not an action which constitutes a significant change in employment.

Although not originally argued by Brennan in her motion for summary judgment, Brennan notes in her reply that the Sixth Circuit held in *Stone v. Board of Directors of Tenn. Valley Authority*, 35 F. App'x 193, 199 (6th Cir. 2002), that a fitness examination was not an adverse employment action. Here, much like in *Stone*, while the Fitness for Duty Examination requests may have been annoying or offensive to Moore, the requests alone do not amount to a "materially adverse change" in the conditions of her employment. As such, it is recommended that Moore cannot establish a *prima facie* case for sex discrimination as to her claims that: (1) on January 27, 2017 she complained of an odor in her unit and

19

management did nothing and (2) on February 3, 2017, she was informed that she would be sent for a Fitness for Duty Examination.[7] Accordingly, it is recommended that Brennan's motion for summary judgment be granted as to these claims.

Additionally, as to each of the six allegedly discriminatory actions, Moore fails to establish that she was treated differently than similarly situated male employees. The plaintiff bears the burden to show that comparable employees are similarly situated in all relevant aspects. *Eregovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). This showing requires that the plaintiff compare the treatment of the plaintiff with the treatment of fellow employees in employment situations "nearly identical" to the plaintiff's in all relevant respects. *Id.* at 352. To be properly comparable, the individuals "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct of the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Failure to provide evidence regarding the alleged comparator's "position, job responsibilities, years of experience, length of tenure [], or

---

[7] To the extent Moore suggests that the request for Fitness for Duty Evaluations were harassment, that claim is discussed further in Part II.C.

disciplinary history" is fatal to a plaintiff's *prima face* case of discrimination. *Fuelling v. New Vision Med. Labs. LLC*, 284 F. App'x 247, 255 (6th Cir. 2008).

The only comparator Moore refers to is Arnold. Moore argues that Arnold was allowed to threaten and curse at her without being given any disciplinary action by management. The record, however, reflects that various individuals within management discussed the incident with each other, each individual was asked to give a written statement, and that each individual was interviewed about the incident. Additionally, the record demonstrates that Moore was never disciplined or subject to an adverse employment action based solely on this confrontation with Arnold. It is clear from the record that the decision to ask Moore to attend the Fitness for Duty Examinations was not based solely on the confrontation with Arnold, but her responses in her interview about the confrontation with Arnold and her various allegations and confrontations with other co-workers that were allegedly following her.

Arnold, however, is not a proper comparator. As Brennan points out, Arnold did not display the same type of behavior which the Agency found concerning, such as making allegations that co-workers were following him, harassing him, and placing unknown substances in his locked car among other things. Additionally, Arnold and Moore are not identically situated as they have

different immediate supervisors.  (Moore Depo. 18:4-19:13, ECF No. 33-3; McKinnie Depo. 131:24-132:8; ECF No. 33-9.)  With respect to the remaining claims, Moore has not presented any comparator at all.  As such, Moore's failure to provide evidence that she was treated less favorably than a similarly situated male employee is fatal to her claim.  Accordingly, it is recommended that Moore cannot establish a *prima facie* case of sex discrimination and as such, summary judgment be granted in favor of Brennan on this basis.

2.    *The Agency's Legitimate, Nondiscriminatory Reason*

In the alternative, Brennan argues that even if Moore could establish a *prima facie* case of sex discrimination, the Agency had a legitimate, nondiscriminatory reason for its actions.  (Mem. in Supp. of Summ. J. 14, ECF No. 33-1.)  In order to shift the burden back to the plaintiff, the defendant only needs to produce enough evidence to allow a trier of fact to rationally find that the agency's actions were not based on unlawful discrimination.  *See Burdine*, 450 U.S. at 255-56.  "The employer need only articulate a nondiscriminatory rationale." *Cecil v. Louisville Water Co.*, 301 F. App'x 490, 497 (6th Cir. 2008)(citing to *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996)).  The defendant, must, however, demonstrate the legitimate, nondiscriminatory reason with sufficient clarity so as to enable the plaintiff to have fair opportunity to demonstrate pretext. *Id.* at 256.

Brennan explains that management decided to send Moore for Fitness for Duty Examinations after McKinnie's interview with Moore regarding the incident with Arnold and after other outburst and allegations regarding co-workers following her. (Mem. in Supp. of Mot. of Summ. J. 14, ECF No. 33-1.)  Additionally, Brennan relies on McKinnie's EEO Investigation Affidavit in which he explained that Moore was issued a LOW for failure to appear to the three Fitness for Duty Examinations and that, ultimately, the examinations were suspended. (*Id.* (citing to McKinnie EEO Investigative Aff., ECF No. 33-17.))  McKinnie stated if Moore's disruptive allegations of employees following her and harassing her continued, then she would be asked to go to another Fitness for Duty Examination, and if she refused, she would be put on a non-pay status until she attended the Fitness for Duty or was cleared for duty. (*Id.*)

Although the record also indicates that Fitness for Duty Examinations were not required, that Moore was not necessarily violent, or that Fitness for Duty Evaluations were not the only way to address the situation, "[t]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." *Hartsel*, 87 F.3d at 801. "Rather, employers may not hire, fire, or promote for impermissible, discriminatory reasons." *Id*. Furthermore, "[c]ourts are not intended to act as super personnel departments to second guess an

employer's facially legitimate business decisions." *Adams v. Tenn. Dep't of Fin. & Admin.*, 179 F. App'x 266, 272 (6th Cir. 2006)(citation omitted). Nothing in the record suggests that any of the decisions made were impermissibly based on Moore's sex. Accordingly, for purposes of this report and recommendation, it is recommended that the Agency sufficiently articulates a legitimate, nondiscriminatory reason.

    3.   *Moore's Response and Pretext*

In Moore's response, she attempts to establish pretext by arguing that she did not exhibit behavior that would warrant a Fitness for Duty Examination and that the actions of the Agency were based on her sex. (Pl.'s Mem. in Supp. of Reply, ECF No. 39). To withstand the defendant's motion for summary judgment, the plaintiff must "produce sufficient evidence from which a jury could reasonably reject [the defendant's] explanation and infer that the defendant[] intentionally discriminated against him." *Braithwaite v. Timken*, *Co.*, 258 F.3d 488, 493 (6th Cir. 2001). The remaining question is whether the reason given is "simply a pretext designed to mask discrimination." *Jones v. Potter*, 488 F.3d 397, 406 (6th Cir. 2007)(citing *Burdine*, 450 U.S. at 253).

The plaintiff can establish pretext by: (1) showing that the reason has no basis in fact; (2) the reason did not actually motivate the employer's actions; or (3) by showing that the reason was insufficient to motivate the action. *Imwalle v. Reliance Med.*

*Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008)(citations omitted). The plaintiff need not prove that the proffered reasons are in fact pretextual, but rather "must prove only enough to create a genuine issue as to whether the rationale is pretextual." *Mitchell v. United States Postal Serv.*, 738 F. App'x 838, 847 (6th Cir. 2018)(citations omitted). As previously mentioned, however, it is not required that the employer's reason be optimal. *Tingle v. Arbors at Hillard*, 692 F.3d 523, 530-31 (6th Cir. 2012)(citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)). "If an employer has an 'honest belief' in the nondiscriminatory basis upon which it has made its employment decision . . . then the employee will not be able to establish pretext." *Id.* (citation omitted).

Moore does not provide evidence which shows the Agency's reasons were not based in fact, that the reasons given did not actually motivate the Agency, or that the reason was insufficient to motivate the action. Brennan agrees that Moore was not violent, but states that management determined the appropriate action was a Fitness for Duty Evaluation due to the nature of Moore's statements in her interview and other confrontations she had with co-workers. Each of the notices also stated that failure to attend may result in a letter of warning. Furthermore, nothing in the record indicates that the Agency did not "honestly believe" in the basis upon which it made these decisions. For example, Rand's

email explaining that they did not necessarily have to have Moore partake in a Fitness for Duty Examination came months after the original three requests. It also appears from the record that the latest request for a Fitness for Duty Examination and/or medical documentation that cleared Moore for work was prompted by the same concerning behavior. Lastly, Moore's generalized and conclusory assertions that decisions were based on her sex are insufficient to support either her *prima facie* case of sex discrimination or to show pretext. Accordingly, it is recommended that Brennan's motion for summary judgment be granted as to Moore's sex discrimination claims.

C.   Moore's Hostile Work Environment Claim

Moore also alleges that she was subjected to a hostile work environment. In Brennan's motion for summary judgment, she argues that Moore cannot establish certain elements of her *prima facie* case of a hostile work environment claim. (Mem. in Supp. of Summ. J., ECF No. 8-12, ECF No. 33-1.) Considering the context of Moore's complaint, the court will interpret Moore's hostile work environment claim as one based on sexual harassment.

"A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999). Under Title VII, to establish a hostile work environment claim based on sexual harassment, a plaintiff must

show: (1) she was a member of a protected class; (2) she was subjected to unwelcome conduct; (3) the harassment complained of was based on sex; (4) the harassment created a hostile work environment; and (5) there is a basis for imputing liability to the employer. *See, e.g.*, *Lamanna v. Dayton Police Dep't*, 788 F. App'x 1003, 1008-09 (6th Cir. 2019)(citing *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009)).

The Sixth Circuit has explained that a hostile work environment exists where:

> [T]he workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . . Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Virgilio v. Potter*, 59 F. App'x 678, 681 (6th Cir. 2003)(quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993)). In determining whether a working environment is hostile, a court "must consider various factors, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

27

performance.'" *Scarbro v. Saul*, 2020 WL 1469878, at *7 (M.D. Tenn. Mar. 26, 2020)(citing *Harris*, 510 U.S. at 23).

Moore can satisfy the first element of her hostile work environment claim as she is a woman and thus, a member of a protected group. Brennan argues, however, that Moore cannot establish the remaining elements of a *prima facie* case for a hostile work environment. (Mem. in Supp. of Mot. for Summ. J. 9-12, ECF No. 33-1.)

With regards to each claim, with the exception of her being threatened and cursed at by Arnold, Moore fails to establish the second element of her hostile work environment claim – that she was subjected to unwelcome conduct. To establish that she was subjected to unwelcome conduct, the conduct must have "had the purpose or effect of unreasonably interfering with her work performance or created an intimidating, hostile or offensive working environment." *Collins v. Potter*, 2006 WL 8435050, at *4 (W.D. Tenn. Sept. 18, 2006)(citing *Harris*, 510 U.S. at 23). The conduct which Moore complains of – that she complained of an odor in her unit and management did nothing; that she was informed she would be sent for a Fitness for Duty exam; that she was given an Investigative Interview; that she was issued a letter of warning; and that she was placed an Emergency Job Placement – do not rise to the level of creating an intimidating, hostile, or offensive working environment.

28

Although Moore's claim regarding being threatened and cursed by Arnold does fall within "unwelcome conduct," and even if the court construed all of the alleged actions as "unwelcome conduct" for purposes of a hostile work environment claim, Moore's claim would still fail because there is no evidence in the record suggesting that any of these actions were taken because of Moore's sex. "A plaintiff establishes harassment 'based on her sex' by presenting evidence that 'but for the fact of her sex, she would not have been the object of harassment." *Sotoj v. Nashville Aquarium, Inc.*, 2016 WL 3568591, at *5 (M.D. Tenn. July 1, 2016)(citing *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999)). "[H]arassing behavior . . . directed at women and motivated by discriminatory animus against women satisfies the 'based on sex' requirement." *Williams*, 187 F.3d at 565.

Moore has provided no evidence whatsoever that any of the alleged harassment or employment actions were because of her being female. Her general conclusory statements that actions were taken to harass her because she is female are insufficient to establish a genuine dispute of material fact. Moore must go beyond the pleadings and present significant probative evidence to demonstrate that there is more than "some metaphysical doubt as to the material facts." *Moore*, 8 F.3d at 378. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

29

requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48; *LaPointe*, 8 F.3d at 378. Accordingly, because Moore cannot create a genuine dispute of material fact that any unwelcome conduct was because of her sex, it is recommended that Brennan's motion for summary judgment be granted on this basis.

Additionally, Moore fails to demonstrate that the actions resulted in conduct which was sufficiently severe or pervasive to create a hostile work environment. It is true that "the issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile [work] environment case, but whether – taken together – the reported incidents make out such a case." *Adams v. Williamson Med. Ctr.*, 2019 WL 4820457, at *9 (M.D. Tenn. Oct. 1, 2019)(citing *Williams*, 187 F.3d at 562). However, the conduct must still be severe or pervasive. *See Fuelling*, 284 F. App'x at 259-60 (granting summary judgment where the plaintiff claimed to have been subjected to derogatory language on numerous occasions, but could only identify the speaker on one such occasion); *Fasone v. Clinton Twp.*, 1998 WL 165147, at *1 (6th Cir. Apr. 3, 1998)(finding plaintiff failed to sufficiently state claim for hostile work environment where the plaintiff alleged constant harassment, but only identified a few specific instances). The allegations Moore makes, under the totality of the circumstances, simply do not demonstrate that the

conduct of the Agency was so severe or pervasive as to reasonably create a hostile work environment. Accordingly, because Moore fails to create a genuine dispute of material fact, it is recommended that Brennan's motion for summary judgment motion be granted on this basis as well.

Because Moore cannot demonstrate a genuine dispute of material fact as to the second, third, and forth elements of a hostile work environment claim, the court finds it unnecessary to address the fifth and final element of a hostile work environment claim. Additionally, for the reasons stated above in Parts II.B.2 and II.B.3, even had Moore established a *prima facie* case of a hostile work environment, the Agency proffered a legitimate, nondiscriminatory reason and Moore fails to establish pretext.

Accordingly, for the reasons stated, it is recommended that Brennan's motion for summary judgment be granted as to Moore's hostile work environment claim.

D.   <u>Moore's Retaliation Claim</u>

Lastly, Moore alleges that she was subjected to retaliation when: (1) she filed her first EEO complaint on April 19, 2017;[8] (2) when she complained about her safety; (3) received letters for Fitness for Duty Examinations; (4) received the LOW; (5) was placed

---

[8] Moore states that her first EEO complaint was filed on April 19, 2017; however, the record reflects the complaint was filed on April 18, 2017. (First EEO Compl., ECF No. 33-15.)

on Emergency Job Placement on April 4, 2018; (6) the Agency requested that she attend another Fitness for Duty Evaluation on April 6, 2018; (7) when McKinnie requested that she give him her work ID badge and Postal Police escorted her off postal property; (8) she was scheduled for another Investigative Interview on May 31, 2018; and (9) she was forced to retire on April 28, 2018. In her motion for summary judgment, Brennan argues that some of Moore's retaliation claims should be dismissed for failure to exhaust administrative remedies and that for other claims, Moore fails to establish a *prima facie* case of retaliation. (Mem. in Supp. of Summ. J. 15-17, ECF No. 33-1.)

1. *Moore's Failure to Exhaust Administrative Remedies*

Brennan argues that Moore failed to exhaust her administrative remedies with respect to the following claims: (1) McKinnie demanded her work ID badge and postal police escorted her from the postal property; (2) she was placed on Emergency Job Placement on April 4, 2018; (3) the Agency requested that she attend another Fitness for Duty Evaluation on April 6, 2018; (4) she was scheduled for another Investigative Interview on May 31, 2018; and (5) she was forced to retire on April 28, 2018. Specifically, Brennan contends that these claims were never asserted in either of Moore's EEO complaints.

Title VII contains a charge-filing requirement before filing suit in federal court. *See Lockett v. Potter*, 259 F. App'x 784,

32

786 (6th Cir. 2008)(explaining the administrative requirements for a federal employee under Title VII).  The Supreme Court in *Fort Bend County v. Davis* held that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."  139 S. Ct. 1843, 1851 (2019).  "A claim processing rule may be 'mandatory in the sense that a court must enforce the rule if a party 'properly raise[s]' it."  *Id.* at 1849; *see also Lee v. Esper*, 2019 WL 7403969, at *2 (D.S.C. Aug. 13, 2019)(applying *Fort Bend County* to a federal employee's discrimination claim).  In Moore's case, Brennan has properly raised the issue of administrative exhaustion as to these claims. Administrative requirements for a federal employee include:

> [C]onsultation with an EEO counselor within forty-five days of the allegedly discriminatory incident, 29 C.F.R. § 1614.105(a)(1); filing an individual complaint of discrimination with the allegedly discriminatory agency, 29 C.F.R. § 1614.106(a); and receipt of a final agency decision, 29 C.F.R. § 1614.110(a).  The employee may file a discretionary appeal of an agency's final action to the Equal Employment Opportunity Commission ("EEOC") within thirty days of final agency action.  29 C.F.R. § 1614.402(a).  Within ninety days of receiving notice of the final agency action or the EEOC decision, or within 180 days of filing the initial complaint with the agency or the appeal with the EEOC, the employee can file civil suit in a U.S. District Court.  29 C.F.R. § 1614.407(a)-(d).

*Lockett*, 259 F. App'x at 786.

The first of Moore's EEO Complaints is dated April 18, 2017. (First EEO Compl., ECF No. 33-15.)  In it, Moore alleges that she

33

was discriminated against on the basis of sex when: (1) McKinnie gave her a letter of warning; (2) McKinnie and Conway interrogated her regarding an unspecified incident; (3) on December 9, 2016, Arnold made threats and cursed at her and McKinnie took no action; (4) she complained about smell in her unit and McKinnie did nothing; and (5) when she received a Fitness for Duty Evaluation request. (*Id.*) Moore's second EEO Complaint is dated May 4, 2018. (Second EEO Compl., ECF No. 33-16.) In it, Moore alleges both sex discrimination and retaliation when: (1) she was tortured on postal property by the FBI and management was aware; (2) she informed management about getting sick in her work unit and management never came to her unit or investigated her safety complaints: (3) she was walked off postal property by police and asked for her badge; and (4) she was asked to receive a mental evaluation. (*Id.*)

As explained above, there are certain administrative requirements an employee must comply with to have exhausted his or her administrative remedies before filing suit in federal court. *Wilson v. Donahoe*, 2014 WL 12759771, at *3 (S.D. Ohio Oct. 27, 2014). One such requirement is the formal complaint. "The employee . . . must file his formal complaint with the agency's EEO Office within 15 days of the receiving his Notice of Right to File." *Id.* (citing 29 C.F.R. § 1614.105(a)). The record reflects that Moore did not allege retaliation until her second EEO Complaint, filed on May 4, 2018. The record also reflects that

Moore's claims that she was retaliated against when: (1) she was placed on Emergency Job Placement on April 4, 2018; (2) she was scheduled for another Investigative Interview on May 31, 2018; and (3) she was forced to retire on April 28, 2018 were not included in her EEO formal complaint.  Moore has produced no evidence in response to rebut this argument.  Accordingly, it is recommended that Brennan's motion for summary judgment be granted as to those three claims for failure to exhaust administrative remedies.

As to Moore's claims that: (1) McKinnie demanded her work ID badge and postal police escorted her from the postal property and (2) that the Agency requested that she attend another Fitness for Duty Evaluation on April 6, 2018, the court finds that these claims were sufficiently raised in Moore's second EEO complaint.  First, Moore's second EEO complaint states, "management is retaliating . . . [Moore] was walked off postal property by police, [and her] badge taken." (Second EEO Complaint, ECF No. 33-16.)  McKinnie is also expressly named in her complaint.  (*Id.*)  Additionally, although Moore does not specify the date she was asked for another Fitness or Duty Evaluation, she does indicate that acts of alleged discrimination took place on April 4, 2018.  (*Id.*)  This is only two days before what she alleged in her federal *pro se* complaint.

"[T]he judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th

35

Cir. 2004). "The Court's inquiry is objective and focuses on the EEOC investigation one would reasonable expect to occur – not the EEO investigation that actually occurred. In other words, 'a plaintiff may fully exhaust her administrative remedies on a claim even if the claim was not actually . . . specifically stated in the charge." *Maeder v. Hollywood Casino*, 97 F. Supp. 3d 941, 944 (S.D. Ohio 2015)(citing *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 471 (6th Cir. 2008)). "[B]ecause aggrieved employees – and not attorneys – usually file charges with the EEOC, their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEO charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010).

Accordingly, the court finds that Moore's claims that she was retaliated against when McKinnie demanded her work ID badge and postal police escorted her from the postal property and that the Agency requested that she attend another Fitness for Duty Evaluation on April 6, 2018 are reasonably related to the factual allegations contained in her second EEO charge. Therefore, failure to exhaust administrative remedies is not a proper basis for granting summary judgment on these claims.

2. *Moore's Prima Facie Case of Retaliation*

Moore's remaining claims of retaliation include that she was retaliated against when: (1) she filed her first EEO complaint on

36

April 19, 2017; (2) she complained about her safety and management did nothing; (3) she received letters for Fitness for Duty Examinations; (4) she received a LOW; (5) she received another Fitness for Duty Examination request on April 6, 2018; and (6) when McKinnie requested that she give him her work ID badge and Postal Police escorted her off postal property.  In response, Moore contends that "McKinnie stated that if she complained again, she would be forced to go for mental evaluation or put off the clock." (Resp. 15, ECF No. 39.)  Moore also cites to her accident report as proof of direct discrimination.  (Accident Report, ECF No. 39-16.)

Title VII contains an anti-retaliation provision, which provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a). A retaliation claim can be established through either direct evidence or circumstantial evidence.  *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010).  Direct evidence "requires the conclusion that unlawful retaliation was a motivating factor in the employer's action."  *Id.*  However, when the plaintiff offers no direct evidence, but instead offers circumstantial evidence, the retaliation claim is governed by the burden shifting framework set forth in *McDonnell Douglas*.

37

Accordingly, to establish a *prima facie* case of retaliation, the plaintiff must demonstrate that: (1) she acted in a manner protected; (2) the defendant knew of this protected activity; (3) the defendant subsequently took a materially adverse action against the plaintiff; and (4) the adverse action had the causal connection to the protected activity. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Protected activity for purposes of Title VII retaliation includes "oppo[sing] any practice made an unlawful employment practice" and making a charge, testifying, assisting, or participating in an "investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). "Under the opposition clause, the person opposing apparently discriminatory practices must have a good faith belief that the practice is unlawful. There is no qualification on who the individual doing the complaining may be or on who the party to whom the complaint is made." *Warren v. Ohio Dep't of Pub. Safety*, 24 F. App'x 259, 265 (6th Cir. 2001). It includes conduct "such as 'complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008)(quoting *Johnson v Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000)). Moore participated in protected activity for purposes of her retaliation claim when she filed her two EEO complaints on April 18, 2018 and May 4, 2018.

38

Additionally, the record establishes that Moore engaged in protected activity when she opposed Arnold's allegedly harassing behavior in December 2017. Accordingly, Moore can satisfy the first element of her retaliation claim and can show that she engaged in protected activity as early as December 9, 2017.

As to the second element of Moore's *prima facie* case, the record establishes that the Agency was aware of Moore's complaints regarding Arnold and about her two EEO complaints in April 2017 and May 2018. As to Moore's claim that she was retaliated against when she filed her first EEO complaint in April 2017, however, the record fails to demonstrate that the Agency had any knowledge of any *prior* protected conduct to retaliate against. Accordingly, Moore fails to create a genuine dispute of material fact as to that claim of retaliation and it is therefore recommended that summary judgment in favor of Brennan be granted.

To satisfy the third element of a *prima facie* case of retaliation under Title VII, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kea v. Donahoe*, 119 F. Supp. 3d 723, 742 (E.D. Mich. 2015)(citing *Burlington N.*, 548 U.S. at 68). "The 'materially adverse action' element of a Title VII retaliation claim is substantially different from the 'adverse employment

action" element of a Title VII [] discrimination claim." *Laster v. City of Kalamazoo*, 746 F.3d 714, 719 (6th Cir. 2014)(citations omitted).  The bar for the former is lower.

Accordingly, the three original requests for Fitness for Duty Evaluations and the later request in April, although not adverse employment actions for purposes of Title VII's anti-discrimination provision, may have reasonably dissuaded an employee from continuing to complain.  Moore's receipt of a LOW is a materially adverse action as well.  "A reasonable employee might have been dissuaded from continuing to complain about a supervisor's discriminatory conduct after he is issued a disciplinary final written warning by the supervisor." *Fletcher v. United States Renal Care, Inc.*, 240 F. Supp. 3d 740, 752 (S.D. Ohio 2017). Additionally, being requested their badge and escorted off postal property may also reasonably dissuade an employee from making complaints.  Accordingly, Moore can satisfy the third element of her retaliation claim for these four instances of allegedly discriminatory conduct.

As to Moore's allegation that she was subjected to retaliation when she complained about the smell and unsafe conditions in her work and management "did nothing," Moore has failed to establish that this alleged inaction would cause a reasonable person to be dissuaded from continuing to complain.  Furthermore, the record establishes that, although it may not have been satisfactory to

40

Moore, someone in management did inspect the area. Additionally, McKinnie himself signed off on the accident report regarding Moore's complaint of unsafe conditions and smells. (Accident Report, ECF No. 39-16.)    Accordingly, it is recommended that Brennan's motion for summary judgment be granted as to this claim.

"In order to establish a causal connection between the protected conduct and the adverse action, [the] plaintiff must produce enough evidence of a retaliatory motive such that a reasonable juror would conclude that the [adverse action] would not have occurred but for his engagement in protected activity." *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010); *see also Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 769 (6th Cir. 2008)(holding that the plaintiff must offer sufficient evidence raising the inference that the protected activity was the reason for the adverse employment action in order to establish a causal connection).

Evidence that the adverse action was taken shortly after the plaintiff's exercise of protected rights is one way to establish a causal connection. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). In *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008), the Sixth Circuit explained, however, that:

> [w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is

41

significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Id.* at 525. The Sixth Circuit, however, has consistently held that "[m]ere temporal proximity between an assertion of Title VII rights and a materially adverse action without other indicia of retaliatory conduct is not sufficient to establish the causal connection element of retaliation claim." *Evans v. Prospect Airport Servs., Inc.*, 286 F. App'x 889, 895 (6th Cir. 2008)(citation omitted); *Nguyen*, 229 F.3d at 559 (explaining that temporal proximity alone is not particularly compelling in an otherwise weak retaliation case and where the defendants have provided evidence to support its version of events); *Parnell v. West*, 1997 WL 271751, at *2 (6th Cir. 1997)("[T]emporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence."); *Cooper v. City of North Olmsted*, 795 F.2d 1265 (6th Cir. 1986)(rejecting the proposition that temporal proximity is enough and explaining that the plaintiff pointed to no additional evidence to support a finding that the protected activity and the adverse action were connected).

Moore engaged in protected activity on or about December 9, 2016; April 19, 2017; and May 4, 2018. Moore alleges that she was

discriminated against when: (1) she received the three Fitness for Duty requests, all scheduled in February 2017; (2) she received a LOW, dated March 22, 2017; (3) she received another request for Fitness for Duty Examination in April 2018; and (4) McKinnie requested that she give him her work ID badge and Postal Police escorted her off postal property on an unspecified date – although it appears from the record that this occurred around April 2018. Although Moore's protected activity and the allegedly adverse employment actions are close in proximity, temporal proximity alone is insufficient to establish the last element of Moore's retaliation claim.  Moore provides no evidence, other than her conclusory allegations, that she was retaliated against.  Although it is clear from the record that management was aware of Moore's protected activity, the record does not contain any evidence that the actions taken were out of retaliatory motive for Moore engaging in protected activity.  Furthermore, for the reasons stated above in Part II.B.2 and Part II.B.3, Brennan has established that the Agency had legitimate, nondiscriminatory reasons for their actions and Moore has not produced sufficient evidence to establish pretext or rebut those facts.

Accordingly, for these reasons, it is recommended that summary judgment be granted in favor of Brennan on each of Moore's retaliation claims.

III. RECOMMENDATION

43

For the foregoing reasons, it is recommended that Brennan's motion for summary judgment be granted.

Respectfully submitted this 16th day of April 2020.

s/ Diane K. Vescovo_____
DIANE K. VESCOVO
Chief United States Magistrate Judge


NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.